# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| NEREIDA RIVERA COLÓN,<br><br>**Plaintiff**,<br><br>v.<br><br>AT&T MOBILITY PUERTO RICO, INC., *et al.*,<br><br>**Defendants**. | **Civil No.** 17-1675 (FAB) |

## OPINION AND ORDER

BESOSA, District Judge.

Before the Court is a motion to compel arbitration and stay proceedings filed by defendants AT&T Mobility Puerto Rico, Inc. ("AT&T"), Angel Couvertier López ("Couvertier"), Carlos Deliz ("Deliz"), and Victor Pabón ("Pabón"). (Docket No. 13.)

Plaintiff Nereida Rivera Colón ("Rivera") filed suit against defendants pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII"), as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621. Related supplemental state law claims were also filed pursuant to P.R. Laws Ann. tit. 29 §§ 146 ("Law 100"), 185 ("Law 80"), and 155 ("Law 69"). (Docket No. 1.) For the reasons set forth, the Court **GRANTS** defendants' motion to compel arbitration and **DISMISSES** plaintiff's claims **with prejudice**.

**I.  BACKGROUND**

Rivera held an Assistant Store Manager position with AT&T in Mayagüez.  (Docket No. 13-4 at p. 2.)  She supervised between 10-20 sales associates and "had general oversight over the store's day-to-day operations."  Id.  After 18 years of working for AT&T, plaintiff was discharged for alleged negative evaluations and poor performance.  (Docket No. 1.)

On May 19, 2017, Rivera filed a complaint alleging that her erstwhile employer engaged in discriminatory and retaliatory behavior against her.  Id.  Defendants answered, (Docket No. 12), and filed a motion to compel arbitration and stay proceedings, (Docket No. 13).  Plaintiff opposed.  (Docket No. 14.)

Plaintiff's suit against the defendants alleges violations of Title VII and Puerto Rico Laws 100, 80, and 69.  (Docket No. 1.)  Plaintiff seeks relief for loss of income, punitive damages, double compensatory damages pursuant to state law, and attorney's fees.  Id.

**II.  Discussion**

Defendants request arbitration, invoke the dispute resolution program, which includes the AT&T Management Arbitration Agreement ("Agreement"), and request the Court to stay the case, pending the outcome of arbitration.

Defendants argue that plaintiff must arbitrate her claims because AT&T created an opt-out arbitration program, and plaintiff did not opt out of it. Defendants aver that she was given fair notice and warning. (Docket No. 13-1.) Plaintiff disagrees and contends that she cannot be obliged to arbitrate because she never explicitly agreed to the arbitration agreement. (Docket No. 16.)

### A.  Legal Standard

The Federal Arbitration Act, 9 U.S.C. §§ 1-16, establishes the validity and enforceability of written arbitration agreements. The FAA also provides that a written arbitration agreement is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA expresses a Congressional policy in favor of arbitration, and places arbitration agreements on an equal footing with other contracts. 9 U.S.C. § 2; see Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 449, 126 S.Ct. 1204, 163 L.Ed.2d 1308 (2006). The FAA mandates district courts to compel arbitration when the parties have signed a valid arbitration agreement governing the issues in dispute, removing the district court's discretion over whether to compel arbitration or provide a judicial remedy to the parties. 9 U.S.C. § 2; see Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 224, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985). The existence of a valid arbitration agreement

is based on the consent of the parties to arbitrate at least some of their claims, foregoing a judicial remedy for those claims. McCarthy v. Azure, 22 F.3d 351, 354-55 (1st Cir. 1994) (internal citations omitted). A party cannot be required to submit any dispute to arbitration to which he or she has not agreed. See AT&T Techns., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 651, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) (quoting United Steelworkers of Am. v. Warrior & Gulf Nav. Co., 363 U.S. 574, 583, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960)).

Based on the above principles, the United States Court of Appeals for the First Circuit has set forth four requirements that must be satisfied for a court to compel arbitration: (1) a valid arbitration agreement must exist; (2) the moving party must be entitled to invoke the arbitration clause; (3) the other party must be bound by the clause; and (4) the claim must fall within the scope of the arbitration clause. InterGen N.V. v. Grina, 344 F.3d 137, 150 (1st Cir. 2003).

### 1. Valid Arbitration Agreement

The first requirement of the InterGen N.V. test is satisfied if either party can prove the existence of a valid arbitration agreement. See InterGen N.V., 344, F.3d at 142. Defendants have provided the Court with the Agreement, which provides the following:

Civil No. 17-1675 (FAB)                                              5

> Under this Agreement, you and the AT&T company that employs you ("the Company") agree that any dispute to which this Agreement applies will be decided by final and binding arbitration instead of court litigation. Arbitration is more informal than a lawsuit in court, and may be faster. Arbitration uses a neutral arbitrator instead of a judge or jury, allows for more limited discovery than in court, and is subject to very limited review by courts. Under this Agreement, Arbitrators can award the same damages and relief that a court can award. Any arbitration under this Agreement will take place on an individual basis; class arbitrations and class actions are not permitted. Except for a filing fee if you initiate a claim, the Company pays all the fees and costs of the Arbitrator. Moreover, in arbitration you are entitled to recover attorneys' fees from AT&T to the same extent as you would in court.

(Docket No. 13-2 at p. 7.)

Defendants have demonstrated the existence of a valid arbitration clause. Plaintiff argues, however, "there is no valid and enforceable arbitration agreement in existence between the plaintiff and the defendants pursuant to the laws of Puerto Rico." (Docket No. 16 at p. 2.) Plaintiff's reasoning that a valid arbitration clause does not exist because she did not consent do it does not disprove the clause's existence. The Court finds that a valid agreement to arbitrate exists.

**2. Moving Party**

The second requirement of the InterGen N.V. test is satisfied if the party seeking to invoke the arbitration clause is a party to the agreement containing the arbitration provision. See InterGen N.V., 344, F.3d at 143. The Agreement states that

the "agreement applies to any claim that [the employee] may have against any of the following: (1) any AT&T company, and (2) its present or former officers, directors, employees or agents in their capacity as such or otherwise . . . ."  (Docket No. 13-2 at p. 7.) As stated in the agreement, defendant AT&T is a party to the arbitration agreement.  Defendants Couvertier, Deliz, and Pabón were all employees at the time of the alleged violations and therefore are also parties to the agreement.  Accordingly, all defendants can properly invoke the Agreement's arbitration provision.

### 3. Other Party Must Be Bound

The third requirement is satisfied if the party against whom the moving party seeks to enforce the arbitration agreement is a participant to the agreement.  See InterGen N.V., 344 F.3d at 143.  Plaintiff argues that she cannot be bound to arbitrate because she never explicitly consented to the Agreement.

Defendants aver that on November 30, 2011, AT&T sent an initial email notice to plaintiff regarding the new dispute resolution program and informed her of "the opportunity to opt out."  The email contained a link to the full agreement and advised plaintiff that she had 60 days to opt out of the arbitration program.  The email also advised plaintiff that whether to accept

or opt out of the program was discretionary and "entirely up to [her]." The email reads as follows:

> Important Notice Regarding Management Arbitration Agreement
>
> The Management Arbitration Agreement that appears below provides for employees and AT&T to use independent, third-party arbitration rather than courts or juries to resolve legal disputes. **It is very important that you read this Agreement, as it affects your rights.**
>
> The decision whether or not to participate in the arbitration process is entirely up to you. No one will be subjected to pressure or retaliation in connection with this decision. If, contrary to this assurance, you believe you have experienced any pressure or retaliation, please contact AT&T Hotline [. . .].
>
> **Should you choose not to participate, you must opt out —that is, decline to participate in the arbitration process— no later than 11:59 pm Central Time on Monday, February 6, 2012 [12:59 am, Atlantic Standard Time, Tuesday, February 7, 2012].** If you do not opt out by the deadline, you are agreeing to the arbitration process as set forth in the Agreement. If you choose to opt out, use this link [. . .], which will take you to the site where you can electronically register your decision to opt out. That site will generate and send to you written confirmation of your decision to opt out.
> Once you have completed your review of the Agreement, please click the "Review Completed" button, whether or not you choose to opt out.
>
> If you have any questions about this Agreement, please contact OneStop [. . .].

(Docket No. 13-2 at p. 7.)[1] Plaintiff does not contest that she received the email containing the Agreement. See Docket Nos. 1 and 16.

The Court must determine whether AT&T gave defendant explicit notice that all disputes would be solved by arbitration. See Garcia-Clara v. AIG Ins. Co. P.R, No. CV 15-1784CCC, 2016 WL 1261058 (D.P.R. 2016) (Cerezo, J.), appeal dismissed (July 29, 2016)(similar case where the employee received and read emails regarding a dispute resolution program but did not opt out. The Court held that plaintiff was bound to arbitration because she had received explicit notice of the program.)

In order to support defendants' posture that explicit notice was given, defendants offer Application Development Specialist Jeremy Dunlap ("Dunlap")'s declaration under penalty of perjury.[2] (Docket No. 13-3.) Dunlap provided technical support for an application that automates certain processes ("Promenta"), which AT&T used to draft and distribute documents and emails to the company employees. Id. at p. 2.

---

[1] AT&T also sent follow-up emails, identical to the one above, on December 17, 2011 and January 17, 2012. (Docket No. 13-3 at p. 3.)

[2] Defendants also offer declarations under penalty of perjury by Kathleen Matyola, Jeffrey de Jesus, Susan Bounds, Hilda Ramirez, Jose Benitez, and Sara Tomezsko. (Docket Nos. 13-2 – 13-8.)

Dunlap declares, "between November 30, 2011 and December 5, 2011, AT&T utilized the Promenta application to send an email to the internal (i.e. Company-provided) email addresses of approximately 103,906 of its employees." (Docket No. 13-3 at p. 2.) Plaintiff was among these employees. Id. at p. 8. The emails contained the subject title "Action Required: Notice Regarding Arbitration Agreement." Id. at p. 7.

According to Jeffrey de Jesus ("de Jesus")'s declaration under penalty of perjury, AT&T required plaintiff to monitor and respond to the work emails she received. (Docket No. 13-4 at p. 2.) "This was particularly important for someone in Rivera's position, because many work-related communications from [de Jesus] and from other AT&T management personnel were transmitted by e-mail, and often Rivera would be required to communicate corporate directives or company initiatives contained in these e-mails to the sales associates she supervised." Id.

While AT&T employed plaintiff, her "AT&T computer system username ("UID") was NR5536 and her AT&T e-mail address was NR533@us.att.com. Rivera's UID and e-mail were unique to her." (Docket No. 13-4 at p. 2.) Plaintiff does not object that the username or email address provided are hers. In compliance with AT&T's Code of Business Conduct, employees are required "to safeguard the integrity and confidentiality of AT&T's computer

systems, networks, and electronic data by protecting UIDs and passwords." (Docket No. 13-4 at p. 3.) Plaintiff does not contest that only she had access to her username, email address, and passwords.[3]

Dunlap, who had access to the list of email addresses that received the Agreement message, declared that the Agreement was sent to recipient NR5536@us.att.com on November 30, 2011 at 9:06 p.m., on December 17, 2011 at 5:00 a.m., and on January 17, 2012 at 5:01 a.m. Plaintiff, therefore, received the Agreement three times.

In the case where an employee did not want to participate in the Agreement, he or she had the option to opt out; "should [the employee] choose not to participate, [the employee] must opt out —that is, decline to participate in the arbitration process— no later than 11:59pm Central Time on Monday, February 6, 2012." (Docket No. 13-2 at p. 7.) There is no record of plaintiff choosing to opt out of the arbitration agreement. See Docket No. 13-6 at p. 3. Instead, AT&T records indicate that "Rivera affirmatively acknowledged having seen the Agreement by clicking a button on the page labeled 'Review Completed' on January 17, 2012." (Docket No. 13-8.)

---

[3] Any employee who discloses their network password to another person is in violation of AT&T policy. (Docket No. 13-4 at p. 3.)

The Court finds that the three emails plaintiff received advised her of the existence of the Agreement and instructed her specifically to visit the link provided for more information. AT&T also provided a phone number employees could call in case they had additional questions or concerns. The Agreement was readily available to plaintiff and she was given 60 days to decide whether she wanted to opt out of the program. The Court finds that AT&T gave plaintiff explicit notice of the arbitration program. Plaintiff also acknowledged the existence of the arbitration program when she clicked the "Review Completed" button in her email. By choosing not to opt out of the Agreement, plaintiff accepted the arbitration program and is bound by it.

### 4. Claims Must Fall Within Scope of Arbitration Agreement

Finally, plaintiff's claims must be within the scope of the arbitration clause. Courts are tasked with determining whether the arbitration clause is susceptible of an interpretation that covers the asserted dispute. See AT&T, 475 U.S. at 650, 106 S.Ct. 1415. The Agreement reads:

> Unless stated otherwise in this Agreement, covered claims include without limitation those arising out of or related to your employment or termination of employment with the Company and any other disputes regarding the employment relationship, trade secrets, unfair competition, compensation, breaks and rest periods, termination, defamation, retaliation, discrimination or harassment and claims arising under

> the Uniform Trade Secrets Act, Civil Rights Act of 1964, Americans With Disabilities Act, Age Discrimination in Employment Act, Family Medical Leave Act, Fair Labor Standards Act, Genetic Information Non-Discrimination Act, and state statutes and local laws, if any, addressing the same or similar subject matters, and all other state and local statutory and common law claims. This Agreement survives after the employment relationship terminates [. . .].

(Docket No. 13-2 at pp. 7-8.)

Although arbitration is not appropriate for every claim, once a party has "made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." Mitsubishi Motors Corp. v. Soler-Chrysler-Plymouth, Inc., 473 U.S. 614, 640 105 S. Ct. 3346, 87 L.Ed.2d 444 (1985). Here, plaintiff's claims arise from her termination and alleged discrimination and retaliation pursuant to federal statutes, specifically the ADEA, and state laws. These claims are specifically listed in the Agreement. See Docket No. 13-2 at pp. 7-8. The Supreme Court of the United States has held that ADEA claims may be arbitrated. See Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 35 111 S. Cit. 1647, 114 L.Ed.2d 26 (U.S. 1991.) The recovery of losses and damages plaintiff seek relate directly to the Agreement. Accordingly, the Court finds that plaintiff's claims fall within the scope of the arbitration agreement.

Because the Court finds that all four requirements of the InterGen N.V. test are met, the Court **GRANTS** defendants' motion to compel arbitration.

**B.   Stay of Proceedings Pending Arbitration**

The final inquiry for the Court is to determine whether to stay plaintiffs' claims pending the completion of arbitration. Pursuant to section 3 of the FAA, where the issues before a Court are arbitrable, the Court shall "stay the trial of the action until such arbitration has been in accordance with the terms of the agreement."  9 U.S.C. § 3.  The First Circuit of Appeals has held, however, that a "court may dismiss rather than stay, a case when all of the issues before the court are arbitrable." Bercovitch v. Baldwin Sch., Inc., 133 F.3d 141, 156 n. 21 (1st Cir. 1998); accord Next Step Med. Co. v. Johnson & Johnson Int'l, 619 F.3d 67, 71 (1st Cir. 2010) ("Where one side is entitled to arbitration of a claim brought in court, in this circuit a district court can, in its discretion, choose to dismiss the law suit, if all claims asserted in the case are found arbitrable.").  Having found that all claims in this case are arbitrable, and that arbitration is final and binding, the Court **DISMISSES** this case, **with prejudice**.

**III. CONCLUSION**

For the reasons discussed above, the Court **GRANTS** defendants' motion to compel arbitration, and the case is **DISMISSED WITH PREJUDICE.**

Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, August 21, 2017.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE
